# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 3:24-CR-0250-S |
| | § | |
| KEITH J. GRAY | § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Keith J. Gray's Motion for Acquittal (Rule 29 F.R.C.P.) ("Rule 29 Motion") [ECF No. 113] and Defendant's Supplemental Motion for Acquittal (Rule 29 F.R.C.P.) ("Supplemental Rule 29 Motion" and, together with the Rule 29 Motion, "Motions for Acquittal") and Motion for New Trial (Rule 33 F.R.C.P) ("Motion for New Trial") [ECF No. 132]. The Court has reviewed the Motions for Acquittal, the Motion for New Trial, the United States of America's Brief in Opposition to Defendant's Oral Motion for Judgment of Acquittal ("Response to the Oral Rule 29 Motion") [ECF No. 114], the United States of America's Response to the Rule 29 Motion [ECF No. 131], the United States of America's Response to the Motion for New Trial ("Response to the Motion for New Trial") [ECF No. 133], Defendant's Reply to the Response to the Motion for New Trial [ECF No. 137], Defendant's Post-Hearing Supplemental Brief on Motion for Acquittal (Fed. R. Crim. P. Rule 29) and Motion for New Trial (Fed. R. Crim. P. Rule 33) [ECF No. 142], the United States of America's Supplemental Brief in Response to Defendant's Motions for a Judgment of Acquittal and for a New Trial ("Government's Supplemental Brief") [ECF No. 143], all of the trial evidence, and the applicable law. For the following reasons, the Court **DENIES** the Motions for Acquittal and **GRANTS** the Motion for New Trial.

# I. BACKGROUND

## *A. Procedural Background*

Defendant was charged with Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks in violation of 18 U.S.C. § 371 (42 U.S.C. § 1320a-7b(b)(1), (2)) (Count One), Offer and Payment of Kickbacks and Bribes in Connection with a Federal Health Care Program in violation of 42 U.S.C. § 1320a-7b(b)(2)(B) and 18 U.S.C. § 2 (Counts Two through Six), and Monetary Transactions in Criminally Derived Property in violation of 18 U.S.C. § 1957 (Counts Seven through Nine). *See* Indictment [ECF No. 1]. On February 19, 2026, after a seven-day jury trial, the jury returned a verdict of "Guilty" on all counts. *See* Verdict of the Jury [ECF No. 125].

At the close of the Government's case-in-chief, Defendant orally moved for a judgment of acquittal on all counts and filed the Rule 29 Motion pursuant to Federal Rule of Criminal Procedure 29(a)[1] on the basis that the Government did not provide sufficient evidence of any intent to improperly influence the healthcare decisionmakers. *See* Tr. of Jury Trial ("Trial Transcript") vol. 4 [ECF No. 108] 103:9-107:16; Rule 29 Mot. 1-5. At the close of his case-in-chief, Defendant orally renewed his request for a judgment of acquittal, "re-urging the argument made in [the Rule 29 Motion]" and adding that the Government did not provide sufficient evidence of Defendant's specific intent to violate the law. *See* Trial Tr. vol. 6 [ECF No. 121] 137:2-25. After the jury returned its verdict, Defendant filed the Supplemental Rule 29 Motion and the Motion for New Trial. The Supplemental Rule 29 Motion renewed the oral motions for a judgment of acquittal and the Rule 29 Motion pursuant to Rule 29(c) and replied to the Response to the Oral Rule 29 Motion. Suppl. Rule 29 Mot. 1-3.

[1] Defendant erroneously cited Rule 29(c), which only applies after the jury verdict or discharge; however, the Court considers the Rule 29 Motion under Rule 29(a). *See* Rule 29 Mot. 1.

### *B. Factual Background*

The undisputed evidence presented at trial showed that Defendant controlled multiple companies and laboratories, including Kingdom Health Laboratory, LLC, Axis Professional Labs, LLC, and Parameno TDS, LLC. *See* Gov't Ex. 2, at 22, 84, 120; Gov't Ex. 4, at 1, 5; Gov't Ex. 5, at 21, 83; Trial Tr. vol. 2 [ECF No. 104] 18:8-20:15, 25:5-26:6, 27:20-28:22, 75:13-21; Trial Tr. vol. 5 [ECF No. 116] 123:18-126:13. Defendant's laboratories performed cardiovascular genetic testing. Trial Tr. vol. 2, 82:9-23; Trial Tr. vol. 5, 141:22-142:1. Defendant hired American Health Screening ("AHS"), a company owned by Scott Wohrman and David Heneghan, to market Defendant's cardiovascular genetic testing services to Medicare beneficiaries. Trial Tr. vol. 2, 74:19-75:21, 76:5-8, 84:19-85:23, 87:11-88:2; *see* Gov't Ex. 801 (Marketing Services Agreement between Defendant and AHS).

As part of its marketing services, AHS's telemarketing agents called Medicare beneficiaries and screened them for eligibility for cardiovascular genetic testing. Trial Tr. vol. 2, 126:15-129:4. If a beneficiary was deemed eligible, the AHS telemarketers would transfer the beneficiary to OpenMed, a contractor of AHS, to confirm their qualifications. *Id.* at 134:20-135:2. If the beneficiary was deemed qualified, OpenMed would send a pre-filled order form, cover letter, and the beneficiary's consent form to the beneficiary's primary care physician. *Id.* at 135:3-23, 136:20-137:5, 138:15-20.

The order form contained "[d]iagnosis [c]odes" based on the screening questions. Gov't Ex. 518, at 12; Trial Tr. vol. 2, 138:21-139:1, 268:11-269:14. At the top of the order form was the logo and contact information of one of Defendant's laboratories. Gov't Ex. 518, at 12; Trial Tr. vol. 5, 147:6-8. Approximately 10-20% of physicians who received the order forms signed the forms. Trial Tr. vol. 2, 139:12-14; Trial Tr. vol. 3 [ECF No. 106] 132:23-133:4. If the physician

signed the form, OpenMed would collect the beneficiary's DNA sample and send it to Defendant's laboratories to conduct cardiovascular genetic testing. Trial Tr. vol. 2, 135:21-23, 136:3-11, 139:15-140:22. Defendant then submitted claims for the tests to Medicare for reimbursement. *Id.* at 142:2-20.

The Government's evidence largely focused on Emily Harvey, a Medicare beneficiary, and her physicians. Harvey was contacted by AHS's telemarketers about cardiovascular genetic testing and consented to testing. *See id.* at 252:15-18; Gov't Ex. 518, at 13. OpenMed sent an order form, cover letter, and Harvey's consent form to Dr. Pamela Santone, Harvey's primary care physician. Trial Tr. vol. 2, 260:14-19, 261:2-6; *see* Gov't Ex. 518, at 9-13. Dr. Santone did not sign the order form. Trial Tr. vol. 2, 261:10-11. The order form was also forwarded to Dr. Curtiss Moore, Harvey's cardiologist. *See* Gov't Ex. 518, at 1, 7; *see also* Trial Tr. vol. 2, 254:5-9. Dr. Moore signed the order form. Trial Tr. vol. 2, 278:23-279:1.

## II. LEGAL STANDARD

Under Rule 29, a court, upon a defendant's motion, must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). The court must grant a motion for judgment of acquittal when the evidence, viewed in the light most favorable to the verdict, "is so scant that the jury could only speculate as to defendant's guilt." *United States v. Schuchmann*, 84 F.3d 752, 753 (5th Cir. 1996) (citation omitted). However, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012) (citation omitted). The court should not weigh the evidence or assess witness credibility

when ruling on a motion for acquittal. *See United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997).

Under Rule 33(a), a court, upon a defendant's motion, "may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). A court grants a new trial when the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Robertson*, 110 F.3d at 1118 (citation omitted). Courts have "considerable discretion with respect to Rule 33 motions." *United States v. Jordan*, 958 F.3d 331, 338 (5th Cir. 2020) (citation omitted). In determining whether to grant a new trial, the court "may weigh the evidence and may assess the credibility of the witnesses." *Robertson*, 110 F.3d at 1117 (citation omitted).

## III. ANALYSIS

### *A. Rule 29 Motion for Judgment of Acquittal*

Defendant moves for acquittal with respect to all counts. Rule 29 Mot. 1. After reviewing the evidence in the light most favorable to the verdict, the Court denies the Motions for Acquittal.

#### *i. Counts One through Six: Conspiracy to Defraud the United States and to Solicit or Receive Kickbacks and Offer and Payment of Kickbacks and Bribes*

The Government presented evidence that Defendant paid AHS on a per-sample basis to cold-call Medicare beneficiaries, conduct screenings to qualify those beneficiaries for cardiovascular genetic testing, send to those beneficiaries' physicians pre-filled order forms that selected Defendant's laboratories, and direct DNA samples from qualified beneficiaries to Defendant's laboratories. Trial Tr. vol. 2, 74:3-25, 126:4-129:5, 134:20-137:5, 138:10-139:11, 167:23-168:11, 268:11-269:14. Viewing the evidence in the light most favorable to the verdict, and without weighing the evidence or assessing witness credibility, the Court cannot conclude that the evidence presented at trial as to each element of Counts One through Six was "so scant that the

jury could only speculate as to [D]efendant's guilt." *Schuchmann*, 84 F.3d at 753 (citation omitted). Accordingly, an acquittal is not warranted under Rule 29 on Counts One through Six.

*ii. Counts Seven through Nine: Monetary Transactions in Criminally Derived Property*

The Government presented evidence that Defendant purchased three vehicles using the money that Medicare paid his laboratories for claims obtained through AHS for cardiovascular genetic tests. *See* Trial Tr. vol. 3, 249:12-285:14. Viewing the evidence in the light most favorable to the verdict, the Court cannot conclude that the evidence presented at trial as to each element of Counts Seven through Nine was "so scant that the jury could only speculate as to [D]efendant's guilt." *Schuchmann*, 84 F.3d at 753 (citation omitted). Accordingly, an acquittal is not warranted under Rule 29 on all counts.

***B. Rule 33 Motion for a New Trial***

Under Rule 33, the Court has painstakingly reviewed all of the evidence presented at trial. In doing so, it carefully weighed and assessed the credibility of the witnesses in this case. As a result, the Court concludes that the evidence "preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Robertson*, 110 F.3d at 1118 (citation omitted). A new trial, rather than an acquittal, is warranted because the Court arrives at this conclusion ***only*** after weighing the evidence and assessing the credibility of the witnesses. *See United States v. Collins*, 243 F. App'x 56, 58-59 (5th Cir. 2007) (upholding a district court's alternative grant of a new trial and reversing the judgment of acquittal where the acquittal was impermissibly based on the district court's assessment of a witness's credibility); *see also United States v. Martinez*, 604 F. Supp. 3d 446, 451 (N.D. Tex. 2022) (granting a new trial and denying a judgment of acquittal because, although "it [was] indeed possible" that the defendant committed the offense, "the weight of the evidence presented at trial preponderate[d] against the jury's verdict").

Because "[t]he remedy of a new trial is rarely used," *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997) (citation omitted), the Court does not reach this conclusion lightly.[2] However, after presiding over the trial, listening to oral arguments, ordering and analyzing multiple rounds of briefing, and reviewing the entire record, from opening statements to closing arguments, the Court concludes that it would be a miscarriage of justice to let the verdict stand.

*i. Counts Two through Six: Offer and Payment of Kickbacks and Bribes*

To convict Defendant on Counts Two through Six, the Government had to prove beyond a reasonable doubt (1) that Defendant paid or offered to pay AHS any remuneration, including any kickback or bribe, (2) to induce AHS to order or arrange for or recommend ordering any good, service, or item, namely, cardiovascular genetic tests, (3) that could be paid for by a federal health care program, and (4) that Defendant acted knowingly and willfully when paying or offering to pay the remuneration. Ct.'s Charge to the Jury ("Jury Charge") [ECF No. 124] 9. To prove that Defendant acted with the requisite intent to induce referrals under the second element, the Government had to prove that Defendant intended to improperly influence "those who make healthcare decisions on behalf of patients." *United States v. Cockerell*, 140 F.4th 213, 218 (5th Cir. 2025) (citation omitted). After weighing all the evidence and assessing the credibility of the witnesses, the Court concludes that the credible evidence preponderates heavily against the conclusion that Defendant intended to improperly influence a healthcare decisionmaker.

[2] In over 16 years serving as both a federal and state district court judge, this is the first time that the undersigned has granted a new trial.

*a. Physicians as Decisionmakers*

Contrary to the Government's arguments, the evidence supports no reasonable conclusion other than that the beneficiaries' physicians were the relevant decisionmakers in this case.[3] This conclusion is supported by the testimonies of the three physicians who testified at trial, all of whom were the Government's witnesses. Dr. Rajat Deo, the Government's paid medical expert witness, testified that ordering genetic testing is the physician's responsibility. *See* Trial Tr. vol. 4, 81:6-10, 87:16-89:19, 94:11-19. Dr. Santone exemplified the physician's role as decisionmaker by deciding not to authorize genetic testing for Harvey. *See* Trial Tr. vol. 2, 261:2-15. And Dr. Moore acknowledged that he failed his role as the decisionmaker by signing the genetic testing order form for Harvey without more carefully reading it and that he is now "a lot more careful about what [he] sign[s]." *Id.* at 278:23-279:17, 288:18-22.

Moreover, Defendant testified that the order forms were sent to the beneficiaries' primary care physicians because the physicians were "the decision-maker[s] to their health care." Trial Tr. vol. 5, 145:1-18. The weight of the evidence, including the Government's own evidence, showed that genetic tests were not ordered unless a physician signed off on it. Trial Tr. vol. 2, 139:2-22; Trial Tr. vol. 3, 19:20-20:12; Trial Tr. vol. 5, 16:20-17:10, 22:12-25:16, 146:13-17. Accordingly, the relevant healthcare decisionmakers in this case were clearly the beneficiaries' physicians.

---

[3] AHS cannot be the relevant decisionmaker because the undisputed evidence shows that the physicians ignored the order forms 80-90% of the time, meaning that AHS was not making the final decision on ordering cardiovascular genetic testing for the beneficiaries. *See* Trial Tr. vol. 2, 139:12-14; Trial Tr. vol. 3, 132:23-133:3; *see also United States v. Marchetti*, 96 F.4th 818, 827 (5th Cir. 2024) (setting forth a hypothetical violation of the Anti-Kickback Statute where the salesman could become the relevant decisionmaker when "[m]edical service provider pays salesman, salesman makes choice about service provider, salesman is ***never*** overruled" (emphasis added) (citation omitted)). Further, the selection of Defendant's laboratory was not hidden from the physicians and, thus, the physicians had an opportunity to overrule that selection. *See* Gov't Ex. 518, at 9 ("[S]uch order [will] be filled by Axis Laboratory."); *cf. Marchetti*, 96 F.4th at 827 (finding a violation where the marketer's "selection [was] apparently never overruled—because it seems to have been hidden from the patients and providers.").

*b. Lack of Intent to Improperly Influence*

The evidence preponderates heavily against the conclusion that Defendant and AHS intended to improperly influence the beneficiaries' physicians because the Government failed to "connect [Defendant or AHS] to any referrer." *Marchetti*, 96 F.4th at 827. Defendant and AHS did not have any relationship with the physicians beyond contacting the physicians about the order forms. *Cf. United States v. Shoemaker*, 746 F.3d 614, 629 (5th Cir. 2014) (finding intent to improperly influence physicians where a medical service provider paid the chairman of a hospital's board who had "personal access to [hospital] executives . . . to ensure that [the hospital] favored [the provider]'s company when it chose nursing services"). In fact, Dr. Moore testified that, although he signed the order form, he was not familiar with Defendant's laboratory or AHS. Trial Tr. vol. 2, 279:23-280:10. Further, there was no evidence that Defendant or AHS "provided financial [or] other incentives to induce physicians" to sign the order forms, such as "lavish vacations and offerings of investment in management service organizations." *Cockerell*, 140 F.4th at 217, 220.

Instead, the evidence presented by the Government in its attempt to show that Defendant and AHS exerted improper influence over the physicians consisted of: (1) unreliable testimony about OpenMed calling and lying to the physicians and (2) the pre-filled order forms and cover letters. *See* Gov't's Suppl. Br. 6.

*1. Alleged Lies by OpenMed*

Based on witness testimony and other evidence presented at trial, the Court does not agree with the Government's argument that Defendant and AHS communicated "lies," via OpenMed, to the physicians to influence them to sign the order forms. When specifically asked by the Court to identify all such "lies," the Government could only point to one discrepancy regarding a call from

OpenMed in Harvey's patient chart. Tr. of Mot. for Acquittal and New Trial Hr'g [ECF No. 141] 53:5-57:25. Harvey's patient chart states that OpenMed called Dr. Santone's office to tell her that "[Harvey was] leaving on vacation and [OpenMed] need[ed] to send the kit to [her] before she [left] in February. But they [could not] do it without the form being signed." Gov't Ex. 518, at 1. However, Harvey testified that she did not "take any vacation in February 2021." Trial Tr. vol. 2, 255:20-23. But Harvey, who was 74 years old at the time of trial, appeared confused and forgetful at times during her testimony. *See id.* at 251:25-252:1.

Harvey's demeanor on the witness stand and the fact that she was testifying about something that happened five years prior renders her recollection of events occurring around February 2021 of questionable reliability, especially given the lack of other evidence to support the Government's theory. Further, there was no evidence that OpenMed knowingly communicated false information. And Dr. Santone did not testify that she was influenced by OpenMed's communication in deciding whether to sign the order form. Thus, the Court finds that the discrepancy regarding Harvey's vacation five years earlier does not support the conclusion that Defendant and AHS lied to the physicians to improperly influence them.

*2. Pre-Filled Order Forms and Cover Letters*

Under Rule 29, a rational jury, viewing the evidence in the light most favorable to the verdict and without weighing the evidence, could infer from the order forms and accompanying cover letters an intent to improperly influence the physicians. However, the analysis under Rule 33 leads to a different result.

First, the order forms had to be signed by the beneficiary's primary care physician and stated that the physician's submission of the form "constitutes a Certification of Medical Necessity." Gov't Ex. 518, at 12. The cover letters stated that the diagnostic codes were included

in the order form "ONLY for convenience" and directed the physicians to confirm the diagnostic codes listed on the order form for the patient. *Id.* at 10. Thus, the physicians were to use their independent judgment in signing the order form. *See United States v. Miles*, 360 F.3d 472, 480 (5th Cir. 2004) (holding that the marketer "did not unduly influence the doctors' decisions" where the "doctor's independent judgment regarding patient care [was] not compromised").

Second, credible evidence was presented at trial that Defendant's laboratories implemented measures to attempt to ensure that genetic testing was only performed if a physician ordered the test. Beatrice Moore, one of Defendant's employees, testified at length about the compliance checks conducted on the samples and accompanying order forms sent to Defendant's laboratories. Trial Tr. vol. 5, 14:23-15:5, 16:11-19:3. Moore testified that Defendant never directed her to proceed with testing any samples that were rejected during a compliance check. *Id.* at 26:9-13. This evidence supports the conclusion that Defendant did not intend to usurp the independent decision-making of the physicians who signed the order forms.

Third, Defendant testified that it was his understanding "that [AHS] was not influencing [the physicians]," and "that the doctors that truly found [the testing] a medical necessity and ordered it, that they wanted it." Trial Tr. vol. 5, 229:17-23. And Defendant testified that he avoided using telemedicine physicians because they had "never seen that patient before." *Id.* at 145:1-18. Rather, it was important to him "for the AHS samples . . . to be signed by the primary care doctor" because primary care physicians were "the decisionmaker to the patient's health care." Trial Tr. vol. 6, 122:13-17.

Last, the lack of improper influence on the physicians was borne out in reality. The undisputed evidence showed that about 80-90% of the order forms were not signed by the physicians. The Government's own witnesses testified to that fact. *See* Trial Tr. vol. 2, 139:12-14;

Trial Tr. vol. 3, 132:23-133:4; *see also United States v. Sorensen*, 134 F.4th 493, 497, 500-03 (7th Cir. 2025) (finding no Anti-Kickback Statute violation where physicians "decided whether to sign . . . or to ignore" pre-filled prescription forms and the "[p]hysicians declined 80 percent of the orders"). And Dr. Santone specifically testified that she decided not to sign the order form after reviewing Harvey's file. Trial Tr. vol. 2, 261:2-265:18. Although Dr. Moore testified that he signed the order form, it was not due to any improper influence. Rather, he testified that he was not being careful when he signed it. *See id.* at 278:23-279:17, 288:18-22. This evidence shows that Defendant and AHS "did not prevent physicians from independently choosing" whether to sign the order forms. *Cockerell*, 140 F.4th at 220 (citation omitted).

Taken as a whole, the evidence showing that Defendant did not intend to improperly influence the physicians—the statements on the order forms and cover letters, the order forms being ignored by the physicians 80-90% of the time, the precautionary measures implemented at Defendant's laboratories, and Defendant's testimony—heavily outweigh the evidence that might evince an intent to improperly influence. Accordingly, the Court finds that, after weighing the evidence and assessing the credibility of the witnesses, the evidence preponderates heavily against the conclusion that Defendant intended to improperly influence a healthcare decisionmaker and, therefore, that Defendant paid illegal kickbacks to AHS. Thus, it would be a miscarriage of justice to let the verdict stand on Counts Two through Six, and Defendant is entitled to a new trial.

*ii. Count One: Conspiracy to Defraud the United States and to Solicit or Receive Kickbacks*

A new trial is also warranted on Count One under Rule 33. To convict Defendant under Count One, the Government had to prove: (1) an agreement between Defendant and at least one other person to (A) defraud the Government or one of its agencies by impairing, obstructing, or defeating, through deceitful and dishonest means, the lawful function of the United States Department of Health and Human Services and the Centers for Medicare and Medicaid Services

in their administration and oversight of Medicare, (B) solicit or receive kickbacks or bribes, or (C) offer or pay kickbacks or bribes;[4] (2) Defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and (3) an overt act by at least one of the conspirators in furtherance of some object or purpose of the conspiracy. Jury Charge 6.

*a. Conspiracy to Solicit or Receive Kickbacks*

For there to be "an agreement between two or more persons to pursue [an] unlawful objective," as required by the first element of Count One, an "unlawful objective" must exist. *Marchetti*, 96 F.4th at 826 n.9 (citation omitted). Here, the unlawful objective underlying Count One's conspiracy to solicit or receive kickbacks is a substantive violation of the Anti-Kickback Statute. *See id.* Thus, the Government had to prove an intent to improperly influence the healthcare decisionmaker. *See id.* at 826 n.9, 827 (holding that where the unlawful purpose of a conspiracy is a substantive violation of the Anti-Kickback Statute, the Government must prove an intent to improperly influence a healthcare decisionmaker). For the reasons stated above, the weight of the evidence preponderates heavily against the conclusion that Defendant intended to improperly influence a healthcare decisionmaker. Therefore, the Court will require a new trial on the conspiracy to solicit or receive kickbacks under Count One.

*b. Conspiracy to Defraud the United States*

To convict Defendant of conspiracy to defraud the United States, the Government had to prove that Defendant knowingly and willfully joined in a conspiracy to "deceitful[ly] interfere[] with governmental functions." *United States v. Herron*, 825 F.2d 50, 58 (5th Cir. 1987) (citation omitted). The Government proceeded under two theories: (1) that Defendant defrauded the

---

[4] The jury did not unanimously find Defendant guilty of conspiring to offer and pay kickbacks and bribes; therefore, the Court does not consider this object below. Verdict of the Jury 1.

Government by covering up the alleged kickbacks paid to AHS and/or (2) that Defendant defrauded the Government by billing Medicare for medically unnecessary testing. *See* Gov't's Suppl. Br. 9-10. After assessing the credibility of the Government's key witnesses and weighing the evidence, the Court finds that the evidence heavily preponderates against the verdict on Count One's conspiracy to defraud the United States.

*1. Cover-Up of Alleged Kickbacks*

The Government relies significantly on the testimonies of Wohrman and Heneghan to attempt to prove a cover-up. Wohrman and Heneghan testified that the Marketing Services Agreement, marketing invoices, the software agreement, loan repayments, and AHS's one-percent ownership of Kingdom Health Laboratory, LLC, were fraudulent attempts by Defendant and AHS to cover up Defendant's per-sample payments to AHS[5] and "get around Medicare." Trial Tr. vol. 3, 138:21-24; *see also id.* at 145:19-146:3, 150:24-151:16; Trial Tr. vol. 2, 84:16-89:11, 165:25-172:18, 190:2-191:12.

However, the Court does not find the relevant testimony from Wohrman and Heneghan to be particularly credible. During the Government's examination, Wohrman's and Heneghan's testimonies often appeared robotic and rehearsed. At times, their answers matched each other's a little too perfectly.[6] They were also incentivized to provide testimony that was helpful to the Government's case because their plea agreements depended on their testimonies. Trial Tr. vol. 2, 72:2-12, 73:7-22; Trial Tr. vol. 3, 125:9-17, 126:8-17. Further, Wohrman had personal motivations

---

[5] A per-sample payment to marketers, by itself, does not equate to an illegal kickback. *See Marchetti*, 96 F.4th at 826 ("The structure of the [compensation] contract alone is not sufficient evidence to produce a conviction under the [Anti-Kickback Statute].").

[6] For example, both Wohrman and Heneghan testified that they were hoping to receive "grace" in exchange for testifying. Trial Tr. vol. 2, 73:19-22; Trial Tr. vol. 3, 126:13-17. And at the end of their testimonies, both were asked why they committed the offense and both answered that it was for "money." Trial Tr. vol. 2, 191:16-18 ("Make money."); Trial Tr. vol. 3, 152:2-3 ("It was the money, sir.").

to incriminate Defendant. According to Defendant, the two had a business dispute arising from Wohrman's alleged sale of non-existent software to Defendant. Trial Tr. vol. 5, 222:10-227:4. For all of these reasons, the Court concludes that the relevant portions of Wohrman's and Heneghan's testimonies lack sufficient credibility and therefore carry little weight. And without this testimony, Count One's conspiracy to defraud the United States does not survive Rule 33.

The weight of the unreliable co-conspirators' testimony is additionally diminished by Defendant's testimony that he lied to Wohrman that he was paying AHS per sample, when, in fact, he was paying AHS for its estimated costs to generate leads. Trial Tr. vol. 5, 160:11-161:3, 180:11-220:2, 229:2-230:2. Defendant testified that this was necessary, in his mind, because Wohrman was taking up too much time trying to understand "how he got paid." *Id.* at 228:13-229:1. The Government did not present any evidence, other than through Wohrman and Heneghan, that contradicted Defendant's account. Accordingly, the Court, after assessing the credibility of Wohrman and Heneghan and weighing the Government's evidence against Defendant's testimony, finds that the evidence preponderates heavily against the conclusion that Defendant conspired with AHS to cover up any per-sample payments.

*2. Medically Unnecessary Testing*

The Government did not introduce sufficient evidence that Defendant knew that the purpose of the agreement with AHS was to submit claims for medically unnecessary tests and joined in the agreement with the intent to further that purpose. To the contrary, the order forms stated that the physician's submission of the form "constitutes a Certification of Medical Necessity." Gov't Ex. 518, at 12. And Dr. Deo—the Government's paid expert—testified that it is the physician, not the laboratory conducting the test, who is responsible for determining whether a test is medically necessary. *See* Trial Tr. vol. 4, 80:20-81:10, 87:16-89:19. And though Wohrman

and Heneghan stated vaguely that the purpose of the conspiracy was to defraud the Government, *see* Trial Tr. vol. 3, 136:11-12, even they did not testify that the purpose of their agreement was to submit claims for medically unnecessary tests. In fact, Heneghan testified that Defendant and AHS agreed that AHS would be providing patients "that had a need for genetic testing." Trial Tr. vol. 3, 128:4-9. Accordingly, taken as a whole, the evidence preponderates heavily against the conclusion that Defendant conspired to defraud the United States and violate the Anti-Kickback Statute, and a new trial is warranted on Count One.

*iii. Counts Seven through Nine: Monetary Transactions in Criminally Derived Property*

To convict Defendant under Counts Seven through Nine, the Government had to prove: (1) "Defendant knowingly engaged in a monetary transaction," (2) "the monetary transaction was of a value greater than $10,000," (3) "the monetary transaction involved criminally derived property," (4) the "criminally derived property was derived from specified unlawful activity," (5) "Defendant knew that the monetary transaction involved criminally derived property," and (6) "the monetary transaction took place within the United States." Jury Charge 11-12. The required "specified unlawful activity" is defined as conspiring to defraud the United States and to receive healthcare kickbacks and paying healthcare kickbacks (i.e., Counts One through Six). *Id.* at 12. Because Counts One through Six do not satisfy Rule 33, a new trial is also necessary on Counts Seven through Nine. Therefore, Defendant is entitled to a new trial on all counts under Rule 33.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Acquittal (Rule 29 F.R.C.P.) [ECF No. 113]. And, after weighing the evidence and assessing the credibility of the witnesses, the Court **GRANTS IN PART** Defendant's Supplemental Motion for Acquittal (Rule

29 F.R.C.P.) and Motion for New Trial (Rule 33 F.R.C.P.) [ECF No. 132] in that the Court **GRANTS** Defendant's request for a new trial.

The Court will set this case for trial by separate order.

**SO ORDERED.**

SIGNED September 18, 2026.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**